IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE: : CASE NO. 08-08659 (ESL)
:
FR & S CORP. : CHAPTER 7
:
:
Debtor :
:

OPINION AND ORDER

This case is before the court upon the motion filed by the Treasury Department of the Commonwealth of Puerto Rico (hereinafter referred to as "PR Treasury") requesting the allowance and payment of alleged post-petition administrative expenses for corporate income taxes for the tax year 2008, taxes withheld from salaries for the period ending on December 31, 2008, and the 7% withholding of taxes for the payment of professional services for tax year 2008, pursuant to 11 U.S.C. §§503(b)(1)(B)(i), 507(a)(2) and 507(a)(8)(A) and (D)(Docket Nos. 93 and 128). The chapter 7 trustee objects to the PR Treasury's request for the 2008 corporate income taxes, employment taxes and the 7% tax withholding from the payment of professional services for tax year 2008 to be afforded administrative expense priority based on the following: (i) Debtor filed its bankruptcy petition on December 19, 2008, and was converted to chapter 7 on May 15, 2009, thus the amount requested is an unsecured priority; (ii) The 2008 corporate income taxes, employment taxes and the 7% withholding of taxes for the payment of professional services are pre-petition taxes even though the tax payment was due post-petition. Thus, the PR Treasury is not entitled to administrative expense priority; and (iii) There was no tax incurred by the estate because Debtor's taxable activity occurred pre-petition, before there was an estate. Thus, the first requirement of Section 503(b)(1)(B)(i) is not satisfied (Docket Nos. 101 & 129). For the reasons stated herein, the PR Treasury's request is granted in part and denied in part.

Facts and Procedural Background

FR & S Corp. (hereinafter referred to as "Corporate Debtor") filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code on December 19, 2008. Debtor included the PR Treasury in its

Schedule E (Creditors Holding Unsecured Priority Claims) as a creditor having a claim for sales taxes in the amount of $79,904.08 (Docket No. 31). The 341 meeting of creditors under Chapter 11 was held and closed on January 26, 2009 (Docket No. 34). On May 15, 2009, the court granted Debtor's request for conversion to chapter 7 (Docket Nos. 61 & 64). On May 22, 2009, the PR Treasury filed proof of claim #20-1 as an unsecured nonpriority claim in the amount of $1,227.81 and an unsecured priority claim in the amount of $4,066.77, for a total amount of $5,294.58. The 341 meeting under Chapter 7 was scheduled for June 23, 2009 and was continued to July 14, 2009 (Docket Nos. 66 & 70). The 341 meeting was further continued to August 4, 2009 and closed on August 20, 2009 (Docket Nos. 74 & 88). The case was held open for potential asset recovery.

On November 24, 2009 the PR Treasury filed a motion requesting the allowance of administrative payment for alleged post-petition administrative expenses for corporate income taxes for the tax year 2008, taxes withheld from salaries for the period ending on December 31, 2008, and the 7% withholding of taxes for the payment of professional services for tax year 2008, pursuant to 11 U.S.C. §§503(b)(1)(B)(i) and 507(a)(2) (Docket No. 93). The PR Treasury alleges that Debtor has failed to file the corporate income tax return for the year 2008, which was due on April 15, 2009, and the employee tax returns for the year 2008, for which Debtor as of November 12, 2009 (date of assessment per Exhibit I) owes post-petition taxes in the amount of $14,091.20, interests in the amount of $1,000.04, penalties in the amount of $3,975.51 and surcharges in the amount of $1,409.12 for a total of $20,469.87[1] (Docket No. 93, pg. 2 & Exhibit I). The assessment for the principal amount of post-petition taxes[2] is broken down in the following manner: (i) corporate income taxes for the year 2008 amounts to $5,000; (ii) employment taxes for the year 2008 amounts to $3,441.22; and (iii) the 7% withholding of taxes for professional services for the year 2008

[1] The court notes that the total amount should be $20,475.87 not $20,469.87. The total debt assessed for the 7% withholding (which the PR Treasury classifies as #400) should add to $8,531.30.

[2] The court notes that the PR Treasury classifies the corporate income taxes account as account #200; employment taxes account as account #300; and the 7% withholding of taxes as account #400 (Docket No. 93, Exhibit 3- Account Classification).

amounts to $5,649.98 (Docket No. 93, Exhibit I). On December 11, 2009, the chapter 7 trustee filed an informative motion in response to the PR Treasury's request for payment of administrative expenses arguing that the conversion of the case to chapter 7 on May 15, 2009 makes the year 2008 corporate and employment taxes an unsecured priority balance and the tax liabilities in controversy correspond to pre-petition taxes and thus are not entitled to administrative expense priority (Docket No. 101). On July 20, 2010, the pre-trial conference was held. The court granted thirty (30) days to the PR Treasury to file a legal memorandum in support of its position and the chapter 7 trustee was granted fifteen (15) days to reply to the same (Docket No. 119).

*Parties' Legal Arguments*

On September 7, 2010, the PR Treasury filed its legal memorandum by presenting the following arguments: (i) Sections 503(b)(1)(B) and 507(a)(2) provide for the payment of the estate's administrative taxes; (ii) the post-petition tax periods which have administrative priority are the year 2008 corporate income tax return which was due on April 15, 2009, the informative income tax returns regarding the 7% withholding for the payment of professional services for the year 2008 and were due on April 15, 2009, and the salaries withholding tax returns for the period ending on December 31, 2008, which were due on January 31, 2009; (iii) the obligation of filing and paying for the above referenced year 2008 taxes became due after the filing of the petition, as the PR Treasury cannot request Debtor for the payment of these taxes, prior to the filing of the bankruptcy petition; (iv) Section 507(a)(8)(A)(i) and (D) applies to tax years that became due before the filing of a debtor's bankruptcy petition; (v) Debtor satisfies the requirements of Section 503(b)(1)(B) because: (1) "the right to file and payment [of] the tax returns for the year 2008 arose from a post petition transaction with the Debtor estate" and (2) "[t]he amount claimed is a post-petition debt, administrative expenses in the amount of $20,469.87; and (vi) the amount claimed by the PR Treasury is based on an assessment performed by the agency officials (Docket No. 128).

On September 22, 2010, the chapter 7 trustee filed its legal memorandum opposing that the tax debts in controversy be afforded administrative expense priority due to the following: (i) Debtor filed its bankruptcy petition on December 19, 2008 and the case was converted to chapter 7 on May 15, 2009. Thus, the amount requested is an unsecured priority; (ii) Before the bankruptcy petition is

3

filed there is no estate. Thus, these taxes were not "incurred by the estate" because all taxable activity occurred pre-petition even though the taxes became due post-petition. United States v. Friendship College, Inc., 727 F. 2d 430 (4th Cir. 1984) and Towers v. United States, IRS (In re Pacific-Atlantic Trading Co., 160 B.R. 136 (N.D. Cal. 1993) *aff'd in part and rev'd in part*, 64 F. 3d 1292 (9th Cir. 1995); (iii) In "In re Pacific Atlantic, the IRS' theory was exactly the same, and [the] Court decided that 'Chapter 7 debtor's 1988 tax liability is not [an] administrative expense under 11 USCS §503 but should be accorded seventh priority under 11 USCS §507(a)(7)(A)(iii)' (now (a)(8)(A)(iii)) where 1988 tax was not assessed before commencement of case but became assessable post-petition; and (iv) "[p]ursuant to 11 USCS §503(b)(1)(B)(i), [a] claim is entitled to allowance as administrative expense if two requirements are satisfied: tax must be incurred by estate and tax must not be tax of [the] kind specified in 11 USCS §507(a)(7) (now (a)(8))" citing In re Pacific-Atlantic Trading Co., 64 F. 3d 1292 (Docket No. 129).

*The Issue*

The issue before the court is whether the PR Treasury's claims for a straddling tax year satisfy the requirements of Section 503(b)(1)(B)(i) and are entitled to be treated as administrative expenses for the entire tax year.

The court notes that Debtor's copy of its 2007 corporate income  tax return includes a net deficit or loss of (-$78,542) (Part I, line item 3 and Part II, line item 5) which resulted in a $0.00 tax liability for the year 2007. Debtor's 2007 Corporate Income Tax Return also shows that an excess of $2,520 was paid to the Commonwealth of Puerto Rico in income taxes (Docket No. 8). Moreover, Debtor filed with this court its 2008 Estimated Tax Declaration, Form 480-E, in which its total estimated tax is $0 and it includes a credit of $2,520.00 for income taxes paid in excess (Docket No. 8). However, Debtor nor the Chapter 7 Trustee have filed with this court the 2008 corporate income tax return. Thus, the PR Treasury's presumption that Debtor generated taxable net income for the year 2008 has not been rebutted.

Applicable Law & Analysis

*Interplay between Sections 507(a)(2), 503(b)(1)(B)(i), 507(a)(8)  and 502 (i)*

Section 507(a)(2) provides that the expenses and claims that have second priority are,

4

"administrative expenses allowed under Section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28." 11 U.S.C. §507(a)(2). In turn, Section 503(b) provides in pertinent part;

> "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including–
> (1)(B)any tax–
> (i) incurred by the estate, whether secured or unsecured, including property taxes for which liability is in rem, in personam, or both, except a tax of a kind specified in section 507(a)(8) of this title." 11 U.S.C. §503(b)(1)( B)(i).

For a tax to be afforded administrative expense priority it must satisfy a two prong-test which consists in determining (1) whether the tax was "incurred" by the estate; and (2) whether the tax claim is not a claim which must be treated as a pre-petition priority claim under Section 507(a)(8).  Allan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶503.07[1] (16th ed.  2010). "Thus, the reference in section 503(b)(1)(B)(i) to section 507(a)(8) means that if a tax qualifies for eighth priority treatment under section 507(a)(8),  it is disqualified from administrative expense priority under section 503(b)(1)(B)." Id. at ¶503.07[2].

The second prong will be addressed first since this court understands that it warrants less discussion. Section 507(a)(8)(A) provides in pertinent part;

> "(a) The following expenses and claims have priority in the following order:
> (8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for–
> (A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition–
> (i) for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;
> (ii) assessed within 240 days before the date of the filing of the petition." 11 U.S.C. §507(a)(8)(A)(i) and (ii).

Section 507(a)(8)(A)[3] was specifically amended by the Bankruptcy Abuse Prevention Consumer

---

[3] Prior to BAPCPA, Section 507(a)(8)(A) stated,
"Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for–
(A) a tax on or measured by income or gross receipts–
(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three

Protection Act of 2005 ("BAPCPA") to limit the eighth priority status of income and gross receipts tax claims to those for taxable years "ending on or before the date of the filing of the petition." 11 U.S.C. §507(a)(8)(A). Thus, the income and gross receipts tax claims for straddling tax years are excluded from eighth priority status after the BAPCPA amendments. Some commentators argue that the result of this particular amendment is that the income and gross receipt taxes for straddle years will be treated as post-petition administrative expense claims for the entire tax year (unless the debtor filed for bankruptcy on the last day of its taxable year). See Allan N. Resnick & Henry J. Sommer, 15 Collier on Bankruptcy ¶TX4.03[1] (15th ed. rev. 2010); Carl M. Jenks, *The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005: Summary of Tax Provisions*, 79 Am. Bankr. L.J. 893, 898 (2005).

Section 502(i) provides in pertinent part, "[a] claim that does not arise until after the commencement of the case for a tax entitled to priority under section 507(a)(8) of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. §502(i). "Section 502(i) makes it clear that if these taxes are entitled to priority status under section 507(a)(8), they shall be treated as prepetition priority claims under section 507(a)(8), and not allowed as administrative expenses under section 503(b)(1)." Allan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶503.07[2] (16th ed. 2010). In the instant case, Debtor, a calendar year taxpayer, filed for bankruptcy on December 19, 2008, eleven days prior to the closing of its taxable year, thus it satisfies the second prong of the test since Debtor's 2008 income taxes does not qualify for eighth priority treatment under Section 507(a)(8)(A).

However, the first prong of the test is more difficult to determine, that is, whether the income

---

years before the date of the filing of the petition;
(ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made with 240 days after such assessment was pending, before the date of the filing of the petition; or
(iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case."

6

tax in controversy was "incurred by the state." The term "incurred" is not defined under the Bankruptcy Code. Whether the income tax was incurred by the estate is determined by the corresponding state tax laws, in this case, the Puerto Rico Internal Revenue Code of 1994, as amended (the "PR Code"). See Allan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶503.07[1] (16th ed. 2010) ("When the tax is a state tax, state law will determine when the tax is incurred, and variations in state law will often lead to different results on similar facts"). This court in the case of In re Ramirez Padua (Case No. 04-01065, Docket No. 129) was confronted with this particular issue, except for the fact that it involved individual debtors. The court held that, "[a] tax is incurred when it accrues, generally the tax year ending December 31st (13 L.P.R.A. §8441), but its payment is due the 15th of April of the following year (13 L.P.R.A. §8453)." In the instant case, the Debtor filed for bankruptcy prior to the close of its calendar year, thus the tax for taxable year 2008 accrued subsequent to the filing of the bankruptcy petition meaning that the first prong of the test is satisfied and the income tax liability for the year 2008 was "incurred by the estate." Therefore, the court concludes that the PR Treasury's right to payment or claim[4] arises in the case of a corporate debtor, on the last day of its taxable year, that is, December 31, 2008.

The court notes that there is jurisprudence based on pre-BAPCPA language (refer to footnote 3 of this Opinion and Order) of Section 507(a)(8)(A) in which courts relying on the plain language of the statute found that income taxes failed to satisfy the second prong of Section 503(b)(1)(B)(i), thus enabling the same to bifurcate the straddle year into pre-petition and post-petition income tax liabilities. See In re Pacific-Atlantic Trading Co., 64 F. 3d 1292, 1301-1302 (9th Cir. 1995)("It is undisputed that PATCO's 1988 income taxes do not satisfy §507(a)(7)(A)(i)[5] because the taxable year

_____

[4] Section 101(5)defines the term claim as, "(A) right to payment whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. §101(5)(A).

[5] The court notes that the Bankruptcy Reform Act of 1994 changed the numbering of this section to 507(a)(8). However, the cases cited are prior to the 1994 Bankruptcy Amendments.

did not end 'on or before the date of the filing of the petition.' PATCO's 1988 taxable year ended December 31, 1988; the petition was filed September 15, 1988. Similarly, §507(a)(7)(A)(ii) is not satisfied because the 1988 tax liability was not assessed any time within 240 days before the petition date. The tax at issue, however, fits in its face within the narrow parameters set by §507(a)(7)(A)(iii)"); Missouri Dep't of Revenue v. L.J. O'Neill Shoe Co. (In re L.J. O'Neill Shoe Co.), 64 F. 3d 1146 (8th Cir. 1995)("[the court] interpret[ed] section 507(a)(7)(A)(iii) to address taxes derived from prepetition events 'not assessed before, but assessable ...after, the commencement of the case."); United States v. Hillsborough Holdings Corp. (In re Hillsborough Holdings Corp.), 116 F. 3d 1391 (11th Cir. 1997). The 2005 BAPCPA amendments to Section 507(a)(8)(A) provide that income taxes for the straddle year are entirely post-petition administrative expenses. See Allan N. Resnick & Henry J. Sommer, 15 Collier on Bankruptcy ¶ TX 1.05[5][a] (15th ed. rev. 2010)("Several U.S. Court of Appeals panels have held that the income tax liability of a corporate debtor for the year of bankruptcy filing (the 'Straddle Year') must be bifurcated into a pre-petition component and an administrative expense component, notwithstanding that the filing of the petition does not terminate the corporate debtor's taxable year. BAPCPA amend[ed] section 507(a)(8) governing the priority of taxes to provide that income and gross receipt taxes for Straddle Years are post-petition administrative expense claims that must be paid in full in the ordinary course, rather than pre-petition priority claims that are not payable until emergence (and may at that point be subject to the deferred payment rules of Section 1129(a)(9)(C))").

The Chapter 7 Trustee argues that in In re Pacific-Atlantic Trading Co., 64 F. 3d 1292 (9th Cir. 1995), the Ninth Circuit Court of Appeals held that a chapter 7 debtor's 1988 tax liability was not an administrative expense pursuant to Section 503(b)(1)(B)(i) but should be accorded seventh priority under Section 507(a)(7)(A)(iii), which is now 507(a)(8)(A), for the prepetition portion of the 1988 corporate income tax which was not assessed before commencement of case but became assessable post-petition. The Appellate Court in In re Pacific-Atlantic Trading Company Co. held (1) that since the estate existed on December 31, 1988 the corporate income taxes for that year were "incurred by the estate" and (2) it also held that the income tax claim for the year 1988 in this particular case "fits squarely" with the "narrow parameters" found in Section 507(a)(7)(A)(iii) because the income taxes

had not been assessed at the time of the filing of the bankruptcy but were assessable by the Government (the Internal Revenue Service) after the commencement of the case, thus it failed to satisfy the first prong of Section 503(b)(1)(B)(i) test.[6] However, this case is inapposite to the instant case because the language of Section 507(a)(8)(A) was amended by BAPCPA.

The Chapter 7 Trustee cites the case of United States v. Friendship College, Inc., 737 F. 2d 430 (4th Cir. 1984), to support its contention that the PR Treasury tax claims are pre- petition because they were incurred before there was an estate and thus are not entitled to administrative expense status. The Fourth Circuit in United States v. Friendship College, Inc. concluded that the income taxes withheld from the employees and the FICA taxes withheld from the employees' wages by debtor must be afforded administrative expense priority because the same were incurred by the estate subsequent to the filing of debtor's bankruptcy petition. This court finds that this case supports the PR Treasury's position rather than the Chapter 7 Trustee's argument. Notwithstanding, this court will discuss whether the state employment taxes withheld by Debtor should be afforded administrative expense priority pursuant to Section 503(b)(1)(B)(i) or whether the same are a pre-petition tax claim under Section 507(a)(8)(C).

The Chapter 7 Trustee, without referencing any section of the Bankruptcy Code or legal precedent, further argues that the conversion of this case to Chapter 7 on May 15, 2009 makes the amount requested as an administrative expense an unsecured priority. In the instant case, Debtor did not file a Disclosure Statement or a Plan of Reorganization. Therefore, a plan of reorganization was never confirmed. The case was converted to Chapter 7 approximately six (6) months (May 15, 2009)

---

[6] The Appellate Court concluded in the following manner; "[w]e conclude that PATCO's income taxes fit squarely with the unambiguous terms of §507(a)(7)(A)(iii). Because the 1988 income tax claim is a tax of a king specified in §507(a)(7), it is not entitled to administrative priority pursuant to §503 of the Bankruptcy Code. In conclusion, we hold that PATCO's 1988 income tax liability for income earned prior to the granting of the order for relief and the appointment of the Trustee on October 31, 1988 does not qualify as an administrative expense. Even though the taxes were 'incurred by the estate' on December 31, 1988, the plain meaning of the phrase 'not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case,' persuades us that the 1988 tax claim fits squarely within the definition of §507(a)(7)(A)(iii) and is therefore not an allowable administrative expense." In re Pacific-Atlantic Trading Co., 64 F. 3d at 1304.

after the same was originally filed (December 19, 2008). The income tax liability accrued on December 31, 2008. Consequently, it was incurred by the Chapter 11 estate after petition date and prior to Debtor's Chapter 7 conversion. Chapter 11 administrative priorities for cases that are converted to Chapter 7 must be distributed in accordance to 11 U.S.C. §§726(b), 507(a)(2) and 503(b). The Chapter 11 administrative claims continue to have priority in distribution but are subordinated to the administrative claims that arise after the Chapter 7 conversion. See Allan N. Resnick & Henry J. Sommer, 6 Collier on Bankruptcy ¶726.03 (16th ed. 2010).

*Employment Taxes and Professional Services Taxes Withheld by Debtor*

Employment taxes and professional services taxes withheld by Debtor must also satisfy the two prong test of Section 503(b)(1)(B)(i). State income taxes withheld by a debtor from its employees as well as the 7% tax withholding from the payment of professional services are covered under Section 507(a)(8)(C)[7] which provides the following:

> "Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for--
> (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity." 11 U.S.C. §507(a)(8)(C).

A tax claim must satisfy all of the following five (5) factors for it to be pigeonholed into this particular tax category, namely; "(i) the claim is held by a governmental unit; (ii) the claim is for a tax; (iii) the tax is owed to a party other than the debtor; (iv) the tax must be collected or withheld from that party and transmitted to the governmental unit; and (v) the debtor must be liable for payment of the tax in some capacity." See Allan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶507.11[4] (16th ed. 2010).

An employer's obligation to withhold income taxes from their employees and remit the same to the PR Treasury is mandated by Section 1141(b) and (j) of the PR Code, 13 L.P.R.A. §8541(b) and (j). Section 1141 provides in pertinent part:

---

[7]The court notes that the PR Treasury cited Section 507(a)(8)(D) as being applicable to the withholding of employees state income taxes but that particular section is limited to Federal unemployment taxes (FUTA), social security taxes (FICA), state unemployment taxes or contributions to state unemployment taxes. See Allan N. Resnick & Henry J. Sommer, 15 Collier on Bankruptcy ¶ TX 4.02[1][d][vii] (15th ed. rev. 2010)

"(b) *Requirement of withholding*. Every employer making payment of wages shall deduct and withhold a tax on the sum of all wages determined according to the withholding schedules that, in harmony with the tax rates fixed in this Part, shall be approved by the Secretary of the Treasury and which shall be part of the regulations of this part. For purposes of applying said schedules, the term 'amount of salaries' shall mean the amount by which the wages exceed the allowable exemption for withholding under section (c)(1) of this section." 13 L.P.R.A. §8541(b).

"(j) Return and payment. A person required to deduct and withhold any tax under this section shall, on or before the last day of the month following the close of each of the quarters ending March 31, June 30, September 30, and December 31 of each year in lieu of the time prescribed in §§8453 and 8456 of this title, make a return thereof and pay such tax to the Secretary or that part thereof which has not been deposited in the form and manner prescribed in §§8181 and 8069 of this title. Such return shall be filed with the Secretary and shall contain such information and be made in such manner as the Secretary may by regulation prescribe." 13 L.P.R.A. §8541(j).

Section 1141(l) imposes liability upon the employer for failure to withhold and remit the employees' income taxes by providing the following; "(l). Liability for tax. The employer shall be liable to the Secretary for the payment of the tax required to be deducted and withheld under this section, and shall not be liable to any other person for the amount of any such payment." 13 L.P.R.A. §8541(l). Section 6181[8] of the PR Code, 13 L.P.R.A. §8181 and Article 6181-2 of the corresponding Regulations establish the rules for those employers that must deposit on a monthly, semiweekly or quarterly basis (the frequency of the deposits depends on the total aggregated tax withheld on wages during the lookback period) the income taxes withheld from their employees.

The court finds that the PR Treasury's tax claim for the withholding of state income taxes of

---

[8] Section 6181 provides: "*Obligation to deposit taxes deducted and withheld from wages.* Any person who pays wages and is under the obligation of deducting and withholding any income tax from any employee under §8541 of this title, or under the regulations promulgated by the Secretary pursuant to the Code, and to pay over said tax to the Commonwealth of Puerto Rico, shall deposit the amount of the tax thus deducted and withheld in any of the banking institutions designated as depositories of public funds which have been authorized by the Secretary to receive such taxes. Provided, that federal savings and loan associations and federal savings banks doing business in Puerto Rico shall be deemed to be financial institutions for the purpose of being designated as depositories of public funds for the purposes of this Code. The tax shall be paid or deposited as established in the regulations promulgated by the Secretary with respect to the manner, time, and conditions that shall govern the pay over or deposit of such taxes thus withheld. Upon promulgating these regulations, the Secretary shall follow the pertinent criteria established in the regulatory provisions for the collection and deposit of the income tax withheld on the wages paid by the federal government and the corresponding Social Security taxes." 13 L.P.R.A. §8181.

11

Debtor's employees' satisfies all five (5) factors of this particular tax category, namely Section 507(a)(8)(C). In the instant case, the tax liability for the state income taxes withheld by Debtor fails to satisfy the second prong of Section 503(b)(1)(B)(i) since they are specified in section 507(a)(8), particularly 507(a)(8)(C), and thus, are not entitled to administrative expense priority to the extent the same were incurred pre-petition. This court finds that the pre-petition state income tax withholdings includes the first three quarters of the year 2008[9], given that such taxes were incurred and accrued as of the last day of the first three quarters. The employer's quarterly returns of income taxes withheld for the first three (3) quarters (Form 499 R1-B) were due on or before the last day of the month following the close of the first three quarters, namely April 30th, July 31st and October 31st, 2008. This court concludes that the state income tax withholdings for the last quarter of 2008 accrued post-petition and as such this tax claim is not pre-petition in nature and does not fall under Section 507(a)(8). Thus, the fourth quarter state income tax withholdings for the year 2008 are an administrative expense since the same satisfy the two (2) prong test of Section 503(b)(1)(B)(i).

A corporation has the obligation to deduct and withhold seven percent (7%) of all payments for professional services rendered and remit the same to the PR Treasury as mandated by Section 1143 of the PR Code, 13 L.P.R.A. §8543. Section 1143 provides in pertinent part:

> "(a). *General rule*. The Government of Puerto Rico and every natural or juridical person who, in the exercise of an industrial of business activity of for the production of income in Puerto Rico, makes payments to another person by reason of services rendered in Puerto Rico, and every payer who makes payments to a provider of health services for health services rendered by said provider to any person, shall deduct and withhold seven percent (7%) of said payments." 13 L.P.R.A. §8543(a).

---

[9] This court notes that the PR Treasury is inconsistent in its allegations for the state income taxes for the year 2008. In its legal memorandum it states that administrative expense status should be afforded to this particular tax category for different time periods, namely: (i) "the employee tax returns for the year 2008, which were due on April 15, 2009" (Docket No. 128, pgs. 1-2); (ii) "Salaries Withholdings Tax Returns (300) period ending on December 31, 2008, which Tax Returns were due on January 31, 2009 (Docket No. 128, pg. 6); and (iii) "the Employees Withholding Tax Returns (300) for the first trimester of 2009 (Docket No. 128, p. 8). The court notes that in conformity with Section 1141(j) of the PR Code an employer is required to file quarterly returns of income taxes withheld (Form 499 R1-B) which are due on or before the last day of the month following the close of each quarter. There is no employer quarterly return which is due on April 15, 2009 for the entire 2008 calendar year.

"(c). *Responsibility of the payor*. Every person with the responsibility to deduct and withhold any taxes under the provisions of this section, will be responsible to the Secretary to pay such taxes and will not be responsible to any other person for the amount of any of such payments." 13 L.P.R.A. §8543(c).

"(d). *Income tax return and payment of withheld income*. Every payer required to deduct and withhold the tax provided in subsection (a) of this section shall file a return and pay or deposit the same no later than the tenth day of the month following the close of the calendar month in which the tax was deducted and withheld. Said return shall be filed with the Secretary and shall contain such information and shall be made in the manner established through regulations by the Secretary." 13 L.P.R.A. §8543(d).

"(e) *Failure to withhold*. In the event of failure to withhold the amount referred to in subsection (a) of this section, unless the taxpayer pays the income tax return directly to the Secretary, it shall be collected directly from the government instrumentality or from the person in which the responsibility to deduct and withhold was delegated." 13 L.P.R.A. §8543(e).

"(f) Any person who fails to meet his responsibilities to deduct and withhold the income tax described in subsection (a) of this section shall be subject to the penalties set forth in §§8055 and 8065 of this title." 13 L.P.R.A. §8543(f).

The court also finds that the PR Treasury's tax claim for the 7% withholding tax from payments made for professional services satisfies all five (5) factors of this particular tax category, Section 507(a)(8)(C). In the instant case, the tax liability for the 7% tax withholding for professional services paid and rendered fails to satisfy the second prong of Section 503(b)(1)(B)(i) since the same are specified in section 507(a)(8), particularly 507(a)(8)(C) and thus, are not entitled to administrative expense priority to the extent the same were incurred pre-petition. This court further finds that the pre-petition 7% tax withholdings for professional services includes the first eleven (11) months of the year 2008, since such taxes were incurred and accrued as of the last day of each calendar month and payment of the same is supposed to be remitted to the PR Treasury (Form 480.9A must be submitted monthly along with the payment) no later than ten (10) days after the close of the month following the close of the calendar month in which the tax was deducted and withheld.[10] Additionally, this court finds that the 7% tax withholdings for the first eleven (11) months of the 2008 calendar year

[10] The court would like to clarify that the Annual Reconciliation Statement of Income Subject to Withholding (Form 460.6B.1) is due no later than the 28th of February of the following year. The PR Treasury in its legal memorandum states that the "Informative Income Tax Returns (400) regarding the 7% withholding for the payment of Professional Services for the year 2008, which were due on April 15, 2009" (Docket No. 128, p. 6).

were incurred and accrued as of the last day of each calendar month. However, this court finds that the 7% tax withholding for professional services rendered accrued post-petition (December 31, 2008) and as such the same is not a pre-petition claim in conformity with Section 507(a)(8). Thus, the 7% tax withholdings for the month of December 2008 are an administrative expense since the same satisfy the two (2) prong test of Section 503(b)(1)(B)(i).

## Conclusion

In view of the foregoing, the court finds and concludes as follows: (1) PR Treasury's claim for state income taxes for the entire 2008 calendar year is an administrative expense which satisfies the two prong test of Section 503(b)(1)(B)(i); (2) the state income tax withholdings for the first three quarters of the 2008 year were incurred pre-petition and as such are entitled to eighth priority status in conformity with Section 507(a)(8)(C); (3) the fourth quarter of Debtor's 2008 calendar year is a post-petition tax claim and as such the same is afforded administrative expense priority status since the same does not fall under Section 507(a)(8) and was incurred by the estate on December 31, 2008; (4) the 7% tax withholdings for the first eleven (11) months of Debtor's 2008 calendar year were incurred pre-petition and as such must be afforded eighth priority status pursuant to Section 507(a)(8)(C); and (5) the 7% tax withholding for professional services rendered for the entire month of December 2008 was incurred post-petition and as such satisfies the two (2) prong test of Section 503(b)(1)(B)(i).

In view of the foregoing, the PR Treasury's motion is GRANTED IN PART and DENIED IN PART.

SO ORDERED.

In San Juan, Puerto Rico, this 30th day of March 2011.

Enrique S. Lamoutte
United States Bankruptcy Court

14